1

2

3

4                        UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    LEON M. JONES,                         Case No.  15-cv-01900-WHO

                Plaintiff,
8
                                            ORDER ON CROSS-MOTIONS FOR
9          v.                               SUMMARY JUDGMENT

10   CAROLYN W. COLVIN,                      Re: Dkt. No. 22

                Defendant.
11

12         Currently before me are the parties' cross-motions for summary judgment concerning

13   plaintiff Leon M. Jones's applications for disability insurance benefits.  The Administrative Law

14   Judge (ALJ) denied his claims.  Substantial evidence supports her decision.  Accordingly, I affirm

15   her decision, GRANT the defendant's motion and DENY plaintiff's motion.

16                                      **BACKGROUND**

17   **I.      PROCEDURAL HISTORY**

18         On June 8, 2012, Jones filed his applications for disability insurance benefits, alleging

19   disability from August 21, 2007, when he was injured in a workplace accident.  AR 205, 207.[1]  *Id.*

20   The Social Security Agency denied both claims initially, and again upon reconsideration on

21   January 9, 2013.  AR 110-114, 119-25, 126-32.  Jones filed a request for hearing before an ALJ on

22   January 22, 2013.  AR 133.

23         At the hearing on September 24, 2013, Jones and Mark J. Kelman, a vocational expert,

24   testified concerning Jones's alleged disability.  AR 36-63.   The ALJ issued her decision on

25   November 8, 2013, concluding that Jones was not disabled under sections 216(i) and 223(d) of the

26   Social Security Act.  AR 15-35.

27   _____

28   [1] Jones filed prior requests for disability benefits in 2009 and 2011, claiming the same onset date.
     *See, e.g.*, AR 18, 261.

United States District Court
Northern District of California

On November 27, 2013, Jones requested review by the Appeals Council.  AR 14.  The Appeals Council declined review, rendering the ALJ's determination the Commissioner's final decision.  AR 1-3.  Jones filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

## II.      JONES'S BACKGROUND AND IMPAIRMENTS

At the time of Jones's workplace back injury, he worked as a manager at a waste reclamation facility, where he moved heavy drums, unloaded trucks, and directed two other employees.   AR 46; Plaintiff's Motion for Summary Judgment ("Pl.'s Mot.") at 5.  He has not engaged in substantial gainful activity since that accident on August 21, 2007.  AR 21, 42.

### A.      Medical Records

In September 2007, Jones saw Neurologist Paul LaHaye, who recommended surgery after observing that Jones had a large right L5-S1 disc herniation resulting in right sciatica.  AR 399-400.  In October 2007, Jones underwent spine surgery, a L5-S1 right-sided micro-discectomy.  AR 405.  In December 2007, Jones reported "excellent" and "dramatic" relief from sciatic pain.  AR 396.

Dr. LaHaye reexamined Jones four more times between December 2007 and April 2008, and ultimately found that Jones would not be able to return to his work-related activity prior to the accident.  AR 390-97.  Dr. LaHaye suggested Jones limit lifting to 25-50 pounds and avoid repetitive lifting, bending, twisting, and stooping.  AR 392.  Neurologist Alan Hunstock replaced Dr. LaHaye as Jones's doctor from October to December 2008.  AR 388-89.  Dr. Hunstock diagnosed Jones with status-post L5-S1 right-sided microdiscectomy with chronic right S1 radiculopathy.  AR 389.

In September 2008 Jones met with Orthopedist Donald Pang, who consultatively examined Jones as an agreed medical examiner for Workers Compensation.  AR 441-47.  Dr. Pang reported that Jones cannot return to a job that requires lifting more than forty pounds or "any repetitive squatting, bending, or kneeling-type activities."  AR 446. Dr. Pang reevaluated Jones in September 2009, and opined that Jones will not be able to return to his former employment, and that Jones's spine had reached maximum medical improvement.  AR 422-23.  Jones reported that he is able to lift and carry light to medium objects, walk half a mile, and sit, stand, or walk for one

United States District Court
Northern District of California

1     to two hours.  AR 419.  Dr. Pang evaluated Jones once again in August 2010 and reiterated his

2     opinion that there was no change in the level of Jones's impairment.  AR 476.  Jones reported that

3     at that time he could stand and walk for thirty to sixty minutes, sit for one to two hours, push or

4     pull light objects, lift or carry light to medium objects, and that he has some difficulty with stairs.

5     AR 474.

6         From 2009 through 2011, Jones was seen by pain medicine specialist Michael Tran.  Dr.

7     Tran administered transforaminal epidural steroid injections to Jones.  AR 347, 363, 377, 379.  Dr.

8     Tran consistently diagnosed Jones with "failed back surgery syndrome," with right sciatica, and

9     then right lumbar radiculopathy, which improved after the steroid injections were administered.

10    AR. 355, 351, 353, 355, 357, 367, 377.  In October 2010, Michael Yang, M.D., on behalf of Dr.

11    Tran, assessed Jones with "[r]ight lumbar radiculopathy, much–improved" after epidural steroid

12    injections.  Dr. Yang notes that the steroid injections alleviated 70% of Jones's lower back pain

13    and radicular symptoms, that Jones's pain was 4 out of 10, and that the pain medications helped.

14    AR 355.  Dr. Yang decreased Jones's prescription for Norco because of the "much-improved"

15    lower back pain and intended to decrease his muscle relaxant on the next visit.  AR 356.  In early

16    2011, Dr. Tran reported that Jones's pain had increased to "baseline" eight weeks after the last

17    steroid injection.  AR 349.  Dr. Tran continued Jones on his medication (AR 350) and gave him

18    another steroid injection in February 2011.  AR 347.

19        The SSA requested that Jones see Dr. Fariba Vesali, an orthopedic consultative examiner,

20    in August 2011.  AR 500-03.  In his report, Dr. Vesali diagnosed Jones with chronic low back pain

21    and status-post back surgery.  AR 502.  Dr. Vesali noted that Jones had a normal range of motion

22    in his lumbar region, did not complain of lower back pain, and had no tenderness on his spine.

23    AR 503.  Dr. Vesali concluded that Jones had no postural or lifting/carrying limitations at all.  *Id.*

24        Jones saw consultative examiner Soheila Benrazavi in August 2012 at the request of the

25    Department of Social Services.  AR 508.  Dr. Benrazavi noted that Jones's range of motion was

26    only mildly diminished in his lumbar region and identified evidence of radiculopathy.  AR 511.

27    She concluded that functionally, Jones is able to stand, walk, or sit six hours per eight hour work

28    day, but is only able to lift and carry twenty pounds occasionally and ten pounds frequently due to

1    his lumbar radiculopathy and degenerative disk disease.  AR 511.  Dr. Benrazavi also limited

2    Jones to occasional stooping and climbing, and imposed no manipulative limitations.  *Id.*

3         Internist Joel Paine saw Jones for his back pain in November 2012, January 2013, May

4    2013, and June 2013.  AR 527-28.  Dr. Paine suggested that Jones return to chronic pain

5    management and obtain an evaluation by a pain management specialist.  *Id.*  When Dr. Paine saw

6    Jones in June 2013, Jones had not made an appointment with a pain management specialist, and

7    Dr. Paine reported that Jones could "engage in less than sedentary activity-since 2007."  AR 28,

8    532-33.  Dr. Paine prescribes Jones "Norcos" and recommends he take ibuprofen for his pain.  AR

9    47.  In March 2013, Jones had an MRI.  AR 544-45.  Dr. Paine reviewed the MRI and described it

10   as "fairly unremarkable" and his exam as "fairly normal."  AR 537.  Dr. Paine did not see any

11   findings from the MRI which would suggest a cause for Jones's sciatica.  AR 539.  On his June

12   2013 Residual Functional Capacity Questionnaire, Dr. Paine noted that Jones can sit or stand for

13   no more than one hour at a time and that Jones will have to take six to eight 10-15 minute breaks

14   during an eight-hour working day.  AR 532.  Dr. Paine also noted that Jones can never lift and

15   carry 10 or more pounds, twist, stoop, crouch, or squat.  AR 533.[2]

16        **B.  Jones's Testimony and Daily Life Activities**

17        Jones alleged several subjective complaints at his ALJ hearing.  He testified that he

18   experiences chronic pain and numbness in his lower back that runs down his right leg into his foot.

19   AR 39, 49.  He explained that his pain is relieved by lying down, and by Norcos and ibuprofen.

20   AR 50.  He reported side-effects from these medications such as inability to concentrate,

21   "fogginess," and constipation.  *Id.*  When asked in the ALJ hearing what prevents him from

22   working at any type of job, he responded that a back injury from his past job and side-effects from

23   his medication prevent him from working.  *Id.*  He stated that he has no mental health issues

24   compromising his ability to work.  *Id.*  He also stated that if he is not in class he is at home, lying

25   down.  AR 55.  He reported that he did not use a cane or walker to aid his mobility.  AR 49.

26

27   _____

28   [2] Not at issue on this appeal, Jones had a psychiatric evaluation in August 2011.  AR 504-07.
     Psychologist Marion-Isabel Zipperle diagnosed Jones with dysthymic disorder and found him
     "somewhat depressed."  AR 506 - 07.

Jones testified that his impairments affect every aspect of his daily life and limit his activities.  He lives with his ten year-old daughter and cares for his two sons, ages seven and three, "on weekends for a couple of days" and sometimes throughout the week.[3]  AR 40, 51-52.  At the time of the hearing, he attended classes four days a week at Santa Rosa Junior College, where he was training to become a smog technician through the college's certification program.  AR 52-53.  He was enrolled as a disabled student, which means that he attended lectures and did "shop work" at a special desk and with a special chair so that he could sit and stand as needed to accommodate his disability.  *Id.*

Jones testified that he rarely leaves his house.  AR 50-51.  When he does, he goes to the laundromat, to grocery shop with his daughter's mother, or to class.  *Id.*  He tries to stay away from the laundromat because doing laundry involves carrying a laundry bag.  *Id.*  When he does laundry, Jones's daughter or her mother carry the laundry bag.  AR 55.  When he grocery shops, he always goes with his daughter's mother so that she can drive and carry the groceries.  AR 54.  He testified that he is able to lift a gallon of milk but tries not to lift full gallons to avoid exacerbating his back pain.  *Id.*  He also stated that he is able to do a little vacuuming and cooking once in a while.  AR 50-51.  He reported that he spends most of the day laying down when not in class.  AR 55.

## III.   ALJ'S DISABILITY DETERMINATION

### A.   ALJ'S FIVE STEP INQUIRY

A claimant is "disabled" if: (i) "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (ii) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 1382c(a)(3)(A)-(B).  An ALJ engages in a five-step sequential analysis to determine whether a

---

[3] Dr. Pang's evaluation of Jones states that Jones has four children.  AR 473.

United States District Court
Northern District of California

1   claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a).

2       In the first step, the ALJ determines whether the claimant is engaged in substantial gainful

3   activity ("SGA").[4]  20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i).  If the claimant is not

4   engaging in SGA, the ALJ determines in step two whether the claimant suffers from a severe

5   impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii).

6   In step three, the ALJ determines whether the claimant's impairment or combination of

7   impairments meets or medically equals the criteria of an impairment listed in the administrative

8   regulations.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. Part 404, Subpart

9   P, App. 1; *see also* 20 C.F.R. §§ 404.1525 and 416.925.  If the claimant satisfies the criteria of a

10  listed impairment, he is disabled; if not, the ALJ proceeds to the next step.

11      Before step four, the ALJ determines the claimant's Residual Functional Capacity

12  ("RFC"), which is his ability to perform physical and mental work activities on a sustained basis

13  despite the limiting effects of his impairments.  20 C.F.R. §§ 404.1520(e) and 416.920(e).  In

14  making this finding, the ALJ considers all the evidence in the record including the claimant's

15  severe and non-severe impairments.  20 C.F.R. §§ 404.1520(e), 404.1545; 416.920(e), and

16  416.945.  At step four, the ALJ determines whether the claimant has the RFC to perform the

17  requirements of his "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).

18  If the claimant cannot perform his past work, the ALJ determines in step five whether the claimant

19  can perform any other work existing in the national economy considering his RFC, age, education,

20  and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).  If the claimant is

21  able to do other work, he is not disabled.

22      **B.      ALJ'S DECISION**

23      The ALJ concluded that Jones has the RFC to perform light work, except with occasional

24  postural limitations, and that he retains the ability to engage in simple, routine, repetitive tasks.

25  AR 23-24.  Jones challenges that determination, arguing that the ALJ impermissibly discredited

---

27  [4] Substantial activity is defined as work requiring significant physical or mental activity.  20
    C.F.R. §§ 404.1572(a) and 416.972(a).  Gainful activity is "work usually done for pay or profit,"
28  regardless of whether the claimant is actually compensated.  20 C.F.R. §§ 404.1572(b) and
    416.972(b).

United States District Court
Northern District of California

1  his testimony about his excessive pain and limitations.  He focuses particularly on the ALJ's

2  failure to address his testimony that he could only attend classes with a special desk that allowed

3  him to sit and stand at will; his limited ability to lift only a half-gallon of milk; and that he spends

4  most of the day laying down when not at smog technician training.  Pl.'s Mot. at 6-9.[5]

5       In reaching her determination, the ALJ gave "great weight" to Dr. Benrazavi's August

6  2012 opinion that Jones can engage in exertionally light activity because that opinion (i) was

7  supported by her findings on examination, (ii) gives reasonable consideration to Jones's self-

8  reported limitations and subjective pain, and (iii) is generally supported by the record as a whole.

9  AR 27.  The ALJ also gave "great weight" to the September 2012 and January 2013 opinions of

10  both State agency medical consultants that relied primarily on Dr. Benrazavi's and Dr. Vesali's

11  opinions to conclude that Jones was able to engage in light work with occasional postural

12  limitations.  The ALJ emphasized that those opinions are "supported by Dr. Benrazavi's opinion,

13  and . . . generally supported by past examining source opinions."  *Id*.[6]

14       The ALJ gave less weight to doctors who did not give "reasonable consideration" to

15  Jones's self-reported limitations and subjective pain.  AR 26, 27.  She gave Dr. Pang's opinion

16  "partial weight" because "he did not give reasonable consideration to [Jones's] self-reported

17  limitations and subjective pain," and gave Dr. Vesali's opinion "reduced weight" because Dr.

18  Vesali gave "no consideration to [Jones's] self-reported limitations and subjective pain."  *Id*.

19  Despite giving these treating physicians' opinions only "partial" or "reduced" weight, the ALJ

20  noted – and Jones does not contest – that these doctors' opinions do not impose any limitations

21  greater than those included in the ALJ's RFC.  AR 29.

22       However, the ALJ gave "little weight" to Dr. Paine's June 2013 opinion about Jones's

23

24  [5] At step one, the ALJ found that Jones has not engaged in substantial gainful activity since
   August 21, 2007, the alleged onset date of his disability.  AR 21.  At step two, the ALJ identified
25  Jones's severe impairments as status-post L5-S1 right-sided micro-discectomy in 2007 with
   chronic right S1 radiculopathy.  *Id*.  At step three the ALJ determined that Jones's impairments do
26  not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404,
   Subpart P, Appendix 1.  AR 22.  Jones does not challenge these determinations by the ALJ.
27  [6] The ALJ also gave great weight to psychologist Marion-Isabel Zipperle, who opined that Jones is
   somewhat depressed but "could learn and carry out simple new tasks in typical work environments
28  without additional or special supervision."  AR 507; AR 28.  Jones does not challenge the ALJ's
   reliance on Dr. Zipperle's opinion.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   limitations.  AR 28.  She concluded that Dr. Paine's RFC opinion is conclusory and unsupported

2   in part because "[h]is opinion appears to be based entirely on [Jones's] self-reported limitations,

3   which are not supported by the objective record, including progress notes authored by Dr. Paine."

4   *Id.*  Further, the ALJ determined that Dr. Paine's assessment that Jones could engage in less than

5   sedentary activity since 2007 conflicted with "actual treating and examining sources such as Drs.

6   LaHaye and Pang" who "appear to have limited [Jones] to light or medium activity back in 2008."

7   *Id.*

8           After determining that Jones's statements about the intensity, persistence, and functionally

9   limiting effects of his pain were not substantiated by objective medical evidence, the ALJ found

10  that Jones's testimony was not credible based on a consideration of the entire case record.  AR 24.

11  Although the ALJ acknowledged that Jones's medically determinable impairments could

12  reasonably be expected to cause the symptoms he alleged, she found that Jones's statements are

13  not credible "for the reasons explained in this decision," referencing other instances where she

14  determined that Jones's testimony contradicts either the medical evidence in the record or Jones's

15  own statements about his daily activity.  AR 24, 27, 28, 29.

16          In the conclusion of her decision, the ALJ goes into greater detail about why she did not

17  find Jones's testimony credible.  AR 28-29.  First, she explained that Jones's residual functional

18  capacity assessment is supported by the record as a whole because "[o]bjective imaging from 2007

19  objectively supported a significant lumbar spine impairment; however, within eight months, the

20  claimant's treating and operating neurologist suggested that the claimant could engage in

21  exertionally medium activity."  AR 28-29.  Second, Jones's self-described daily activities are

22  inconsistent with his pain testimony because "[h]e is apparently able to care for young children at

23  home, which can be quite demanding both physically and emotionally."  AR 29.  Finally, she

24  concludes that the medical record does not indicate that Jones is disabled because "other than Dr.

25  Paine's conclusory and unsupported opinion, the record does not contain any opinions from

26  treating or examining physicians indicating that the claimant is disabled or even has limitations

27  greater than those determined in this decision."  *Id.*

28          At step four, the ALJ found that Jones is unable to perform any past relevant work.  AR 29.

8

1    Based on the testimony of vocational expert Mark J. Kelman, at step five the ALJ determined that

2    an individual of Jones's RFC can do several "light" exertional jobs that exist in significant

3    numbers in the national economy.  AR 29-30.  These occupations include housekeeper, janitorial

4    worker, and office helper.  *Id.*  The ALJ concluded that Jones is not disabled under the Social

5    Security Act because he "remains able to perform jobs existing in significant numbers in the

6    economy at the light and sedentary exertional levels."  AR 30-31.

7                                    **LEGAL STANDARD**

8            Under 42 U.S.C. § 405(g), a court reviews the ALJ's decision to determine whether the

9    ALJ's findings are supported by substantial evidence and free of legal error.  *Smolen v. Chater*, 80

10   F.3d 1273, 1279 (9th Cir. 1996); *see also DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991)

11   ("We review the ALJ's determination . . . to determine whether it was supported by substantial

12   evidence and whether it was based on the proper legal standard.").  Substantial evidence means

13   "more than a mere scintilla, but less than a preponderance."  *See Saelee v. Chater*, 94 F.3d 520,

14   521-22 (9th Cir. 1996) (internal quotations and citation omitted).  Substantial evidence is "such

15   relevant evidenced as a reasonable mind might accept as adequate to support a conclusion."  *See*

16   *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citation omitted).

17           A court must review the record as a whole and consider adverse as well as supporting

18   evidence.  *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).  Where evidence is

19   susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  *See*

20   *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  "However, a

21   reviewing court must consider the entire record as a whole and may not affirm simply by isolating

22   a specific quantum of supporting evidence."  *See Robbins*, 466 F.3d at 882 (internal quotations

23   and citation omitted); *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  If the legal error

24   is harmless, then a reversal is unwarranted.  *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir.

25   2012) ("We may not reverse an ALJ's decision on account of an error that is harmless.").  An error

26   is harmless when it is "inconsequential to the ultimate nondisability determination."  *Molina*, 674

27   F.3d at 1115 (internal quotations and citation omitted).

28

United States District Court
Northern District of California

9

United States District Court
Northern District of California

**DISCUSSION**

Jones challenges the ALJ's determination that his testimony concerning the intensity, persistence, and limiting effects of his symptoms is not credible.  Pl. Mot. at 6-9.  I find that the ALJ provided specific, clear, and convincing reasons for rejecting Jones's testimony about the severity of his symptoms by identifying the following three factors: (i) her residual functional capacity assessment was supported by the record as a whole, (ii) Jones's self-described daily activities are inconsistent with his pain testimony, and (iii) the medical opinions in the record do not indicate that Jones is disabled.  AR 28-29.  Her decision is supported by substantial evidence.

The ALJ must engage in a two–step analysis when determining whether a claimant's testimony regarding subjective pain or symptoms is credible.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.* at 1036.  Second, absent evidence of malingering, if the claimant has satisfied the first step "the ALJ may reject the claimant's testimony about the severity of [his] symptoms only by providing specific, clear and convincing reasons for doing so."  *Id.*; *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015).  Substantial evidence does not support an ALJ's decision if the ALJ improperly rejects a claimant's testimony by failing to provide specific, clear and convincing reasons for doing so.  *See Lingenfelter*, 504 F.3d 1028 at 1035.  An ALJ's assessment of a claimant's credibility and pain severity is entitled to great weight.  *See Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

Jones relies on a recent Ninth Circuit case, *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015), to argue that the ALJ did not provide sufficiently specific reasons for discrediting Jones's testimony as to his pain and limitations, particularly Jones's alleged need to lay down frequently, that he rarely left his house, did not shop alone, and rarely lifted a gallon of milk.  Pl.'s Mot. at 5-8.  In *Brown-Hunter*, the ALJ summarized the claimant's testimony regarding her back pain and pain treatment, summarized the medical evidence in the record, and concluded "I find the functional limitations resulting from the claimant's impairments were less serious than she has alleged . . ."  *Id.* at 491.  The Ninth Circuit reversed the district court's decision affirming the

1   ALJ's credibility determination, holding that the ALJ committed legal error by failing to identify

2   which part of the claimant's testimony she found not credible and why.  *Id.* at 489.  The court

3   criticized the ALJ's decision for failing to specifically identify inconsistencies between the

4   claimant's testimony and the evidence in the record.  *Id.* at 494.  "A clear statement of the

5   agency's reasoning is necessary because we can affirm the agency's decision to deny benefits only

6   on the grounds invoked by the agency."  *Id.* at 492 (internal citation omitted).  The court held that

7   although the ALJ's analysis need not be "extensive," it must provide adequate reasoning for the

8   reviewing court to "meaningfully determine whether the ALJ's conclusions were supported by

9   substantial evidence."  *Id.* at 495 (internal citations and quotation marks omitted).

10         Unlike in *Brown-Hunter*, here the ALJ provided specific, clear, and convincing reasons for

11   rejecting Jones's subjective testimony as to the limitations his pain caused.  The ALJ not only

12   summarized the medical evidence in the record, explaining why she gave great, partial, reduced, or

13   little weight to certain doctors' opinions (some of whom she found failed to give *sufficient*

14   consideration to Jones's subjective testimony), AR 25-28, but she also noted that Jones's treating

15   physicians believed he could engage in moderate to light exertional activity soon after his surgery.

16   AR 29.  Second, she concluded that Jones's self-described daily activities are inconsistent with his

17   pain testimony, because "[h]e is apparently able to care for young children at home, which can be

18   quite demanding both physically and emotionally."  AR 29.  *Molina v. Astrue*, 674 F.3d 1104,

19   1113 (9th Cir. 2012) ("[T]he ALJ may discredit a claimant's testimony when the claimant reports

20   participation in everyday activities indicating capacities that are transferable to a work setting.

21   Even where those activities suggest some difficulty functioning, they may be grounds for

22   discrediting the claimant's testimony to the extent that they contradict claims of a totally

23   debilitating impairment.") (internal citation omitted).  Third, she noted that "other than Dr. Paine's

24   conclusory and unsupported opinion, the record does not contain any opinions from treating or

25   examining physicians indicating that the claimant is disabled or even has limitations greater than

26   those determined in this decision."  *Id.*

27         The ALJ is required to explain her reasoning in rejecting subjective testimony so that the

28   reviewing court can conduct a meaningful review.  *Brown-Hunter*, 806 F.3d 487 at 489.  I find

United States District Court
Northern District of California

that the ALJ did so here.  It is true that the ALJ did not *specifically* address Jones's claims about needing to lie down frequently and his self-imposed limitations on lifting.[7]  Nonetheless, her decision as a whole provides adequately specific, clear, and convincing reasons for rejecting Jones's subjective testimony about his debilitating limitations.

## CONCLUSION

The ALJ's decision is affirmed.  Plaintiff's motion is DENIED, and defendant's motion is GRANTED.

**IT IS SO ORDERED**.

Dated: April 14, 2016



WILLIAM H. ORRICK
United States District Judge

United States District Court
Northern District of California

_____

[7] It is significant that there is no corroborating evidence in the record about these limitations.  No lay witnesses testified that Jones experienced these limitations and, as noted, the medical records from his treating physician (as well as the examining physicians) do not support these limitations. Only Dr. Paine's June 2013 RFC questionnaire comes close to imposing these sorts of limitations on Jones's activity but, as the ALJ noted, Dr. Paine's own treatment notes and objective exams do not support that RFC opinion.